IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| Progressive Express Insurance Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:23-CV-156 |
| ) | |
| Ethan Trucking, Inc.; Mesa Carriers Corp.; ) | **COMPLAINT FOR** |
| Eduardo Blanco Castro; Justino Urieta; and ) | **DECLARATORY RELIEF** |
| Esperanza Urieta, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Progressive Express Insurance Company, by and through its undersigned attorneys, complaining of the Defendants herein, seeks a declaratory judgment from this Honorable Court as set forth below.

**PARTIES AND JURISDICTION**

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2. Progressive Express Insurance Company ("Progressive") is a corporation organized under the laws of the State of Ohio with its principal place of business in the State of Ohio.

3. Defendant Ethan Trucking, Inc. ("Ethan Trucking") is a corporation organized under the laws of the State of Florida with its principal place of business in the State of Florida. It may be served by serving its President or any of its vice-presidents at 10770 SW 172nd St., Miami,

1

Florida 33157, or by serving its process agent, John C. Sims, #1A+ Agents of Process, Inc., 1205 Broadway, Lubbock, Texas 79408.

4. Defendant Mesa Carriers Corp. ("Mesa Carriers") is a corporation organized under the laws of the State of Florida with its principal place of business in the State of Florida, but which has been administratively dissolved by the State of Florida. It may be served by serving its process agent, Jerry Fultz, All American Agents of Process, 1221 McKinney, Suite 4300, Houston, Texas 77010, or by serving Defendant Eduardo Blanco Castro, its owner and president.

5. Defendant Eduardo Blanco Castro ("Blanco Castro") is a citizen and resident of the State of Florida. He may be served at 16124 SW 55th Street, Miami, Florida 33185-5013, or by serving the Chairman of the Texas Transportation Commission, J. Bruce Bugg, Jr., at 125 E. 11th Street, Austin, Texas, 78701, pursuant to Tex. Civ. Prac. & Rem. Code § 17.062(a).

6. Defendant Justino Urieta ("J. Urieta") is a citizen and resident of the State of Texas, and may be served at 3709 Sheryl Dr., Mesquite, Texas 75150.

7. Defendant Esperanza Urieta ("E. Urieta") is a citizen and resident of the State of Texas, and may be served at 3709 Sheryl Dr., Mesquite, Texas 75150.

8. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1392(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

**FACTUAL BACKGROUND**

10. On or about May 25, 2019, on Interstate 10 East in Hudspeth County, Texas, J. Urieta was the driver of a 2007 Cadillac Escalade, in which E. Urieta was a passenger, when they were involved in a motor vehicle accident with Blanco Castro (the "Accident").

11. At the time of the Accident, Blanco Castro was operating a 2011 Freightliner (VIN 3HSCWAPR6BN336629) (the "Freightliner") that was pulling a 2017 CIMC Trailer (VIN 527SR5322HM009479) (the "Trailer") (the Freightliner and the Trailer are collectively referred to hereinafter as the "Tractor-Trailer").

12. At the time of the Accident, Blanco Castro was an employee of Mesa Carriers.

13. At the time of the Accident, Blanco Castro was the sole owner of Mesa Carriers.

14. At the time of the Accident, Mesa Carriers was licensed with the Federal Motor Carrier Safety Administration as an interstate common carrier of property under USDOT No. 3150866/MC-00105420.

15. The law enforcement report completed in connection with the Accident indicates Blanco Castro was operating the Freightliner pursuant to the motor carrier authority of Mesa Carriers at the time of the Accident.

16. The crash was recorded against Mesa Carriers' motor carrier authority.

17. During the years 2018 and 2019, all DOT roadside inspections performed on the Freightliner and the Trailer were recorded against Mesa Carriers' motor carrier authority.

18. Upon information and belief, at the time of the Accident, Blanco Castro was operating the Tractor-Trailer within the course and scope of his employment with Mesa Carriers.

19. Upon information and belief, at the time of the Accident, Blanco Castro was operating the Tractor-Trailer pursuant to the motor carrier authority of Mesa Carriers.

20. Upon information and belief, at the time of the Accident, Blanco Castro was operating the Tractor-Trailer in furtherance of Mesa Carriers' interstate motor carrier business.

21. At the time of the Accident, Ethan Trucking was licensed with the Federal Motor Carrier Safety Administration as an interstate common carrier of property under USDOT 2590358/MC-00908598.

22. The only alleged connection between Ethan Trucking and the Accident is that the law enforcement report prepared in connection with the Accident lists Ethan Trucking as the owner/lessee of the Freightliner and the Trailer.

23. Going back to 2012, no DOT inspection for either the Freightliner or the Trailer were recorded against Ethan Trucking's motor carrier authority.

24. At the time of the Accident, Blanco Castro was not an employee of Ethan Trucking.

25. At the time of the Accident, Blanco Castro was not operating the Tractor-Trailer as the agent or employee of Ethan Trucking.

26. At the time of the Accident, Blanco Castro was not operating the Tractor-Trailer pursuant to the motor carrier authority of Ethan Trucking.

27. At the time of the Accident, Blanco Castro was not operating the Tractor-Trailer in furtherance of the interstate motor carrier business of Ethan Trucking.

28. At the time of the Accident, Blanco Castro was not using the Tractor-Trailer to transport cargo in interstate commerce under the motor carrier/DOT authority of Ethan Trucking.

29. At the time of the Accident, there was no agreement, formal, written, or otherwise, between Ethan Trucking and Mesa Carriers/Blanco Castro with respect to the Tractor-Trailer.

The Underlying Lawsuit

30. The Urietas allege they sustained personal injuries as a result of the Accident and initiated a personal injury lawsuit in the 205th District Court of the State of Texas, Hudspeth County, on March 19, 2021, captioned *Justino Urieta and Eperanza* [sic] *Urieta v. Eduardo Blanco Castro, Ethan Trucking, Inc., and Mesa Carriers Corp.*, CV-05126 (the "Underlying Lawsuit").

31. In the Underlying Lawsuit, the Urietas allege a claim for monetary relief between $250,000 and $1,000,000.

32. In the Underlying Lawsuit, the Urietas allege Blanco Castro was negligent in the operation of the Tractor-Trailer, said negligence being a proximate cause of the Accident and the Urietas' alleged injuries.

33. In the Underlying Lawsuit, the Urietas allege Blanco Castro was an employee of Ethan Trucking "and/or" Mesa Carriers.

34. In the Underlying Lawsuit, the Urietas allege Ethan Trucking "and/or" Mesa Carriers are vicariously liable for the negligence of Blanco Castro.

35. In the Underlying Lawsuit, the Urietas allege Ethan Trucking "and/or" Mesa Carriers were negligent in the hiring, training, retention of Blanco Castro, and were negligent in the inspection and repair of the Tractor-Trailer.

36. Progressive has been providing Ethan Trucking a defense to the Underlying Lawsuit pursuant to a full reservation of rights to deny coverage.

The Progressive Policy

37. At the time of the Accident, Progressive had in place a commercial auto liability policy, Policy No. 06364047-1 issued to Ethan Trucking with effective dates of December 4, 2018,

through December 4, 2019, and combined single liability limits of $1,000,000 (the "Progressive Policy"). A true and accurate copy of the Progressive Policy, its endorsements, and its declaration pages is attached to this Complaint as **Exhibit A**.

38. The Progressive Policy was issued to Ethan Trucking at Ethan Trucking's Florida address and is written on Florida forms.

39. The Progressive Policy specifically describes certain autos on the declarations page.

40. The Freightliner is not specifically described or otherwise scheduled on the declarations page to the Progressive Policy.

41. The Trailer is not specifically described or otherwise scheduled on the declarations page to the Progressive Policy.

42. The Progressive Policy lists ten rated drivers on the Progressive Policy.

43. Blanco Castro is not a rated driver on the Progressive Policy.

44. The Progressive Policy lists loss payee(s).

45. Blanco Castro is not a loss payee listed on the Progressive Policy.

46. Mesa Carriers is not a loss payee listed on the Progressive Policy.

47. The Progressive Policy includes additional insureds listed on the declarations page to the Progressive Policy.

48. Blanco Castro is not listed as an additional insured on the Progressive Policy.

49. Mesa Carriers is not listed as an additional insured on the Progressive Policy.

50. The Progressive Policy's Insuring Agreement with respect to Part I—Liability to Others provides, in relevant part, as follows:

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT - LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

51. "Insured" for purposes of Part I—Liability to Others is defined by the Progressive Policy as follows:

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I - Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.
   2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
      (a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
      (b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.
      (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
      For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.
   3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

7

52. "Insured auto" or "your insured auto" is defined by the Progressive Policy as follows:

> 5. "**Insured auto**" or "**your insured auto**" means:
>    a. Any **auto** specifically described on the **declarations page**; or
>    b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
>       (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
>       (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
>       (iii) no other insurance policy provides coverage for that **auto**; and
>       (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.
>    
>    If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**,
>
> 2
>
> these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.
>
> With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.
>
> With respect to Part II - Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
>    (i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
>    (ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.
>
>    c. Any replacement **auto** on the date **you** become the owner if:
>       (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
>       (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
>       (iii) no other insurance policy provides coverage for that **auto**.
>    
>    If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30 day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits or make any other changes to **your** policy during this 30 day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes.

8

B. When used in Part **I - Liability To Others**, **insured auto** also includes:
1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
2. **Mobile equipment** while being carried or towed by an **insured auto**; and
3. Any **temporary substitute auto.**

53. The Progressive Policy includes the following further relevant definitions:

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are autos, not mobile equipment: (. . .)

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.

\*\*\*

14. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

15. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

16. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

17. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

54. The LIMIT OF LIABILITY Section of the Progressive Policy additionally provides,

in relevant part, as follows:

1. Coverage Required by Filings

If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:

9

(i) **we** are required to pay any judgment entered against **you**; or

(ii) **we** agree to settle a claim or lawsuit;

for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse us in full for our payment, including legal fees and costs we incurred, whether the payment is made as a result of judgment or settlement.

55. The Progressive Policy contains an MCS-90 Endorsement issued in the name of Ethan Trucking in the amount of $750,000. The MCS-90 Endorsement provides, in relevant part, as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
>
> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.
>
> The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of

anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

Case or Controversy Requirements are Satisfied

56. Progressive and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described hereinabove. All parties have an interest in determining the applicability of the Progressive Policy, if any, to the parties and claims in the Underlying Lawsuit.

57. All proper and present antagonistic interests or all parties having any interest in the outcome and adjudication of the present controversy are before the Court by proper process.

58. Progressive is in doubt with respect to its rights under the Progressive Policy and, by this Complaint, seeks a declaration of its rights and obligations under the Progressive Policy with respect to claims asserted by or against the Defendants in the Underlying Lawsuit.

59. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

<b>FOR A FIRST CAUSE OF ACTION</b>
<b>(Declaratory Judgment as to Progressive Policy)</b>

60. Progressive restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

61. The Progressive Policy affords no liability coverage for the Accident because at all times relevant to the Accident, neither the Freightliner nor the Trailer qualified as an "insured auto" entitled to liability coverage under Part I of the Progressive Policy because neither the Freightliner nor the Trailer were scheduled on the Declarations Page to the Progressive Policy and

neither qualified as an additional auto, replacement auto, or temporary substitute auto as of the time of the Accident.

62. The Progressive Policy affords no liability coverage for the Accident because at all times relevant to the Accident, neither Blanco Castro nor any other defendant qualified as an "insured" entitled to liability coverage under Part I of the Progressive Policy.

63. The MCS 90 Endorsement to the Progressive Policy is not triggered by the facts of the Accident because Ethan Trucking was not operating as a/the for-hire motor carrier transporting property belonging to another for compensation in interstate commerce with respect to the transport Blanco Castro was performing at the time of the Accident.

64. The MCS 90 Endorsement to the Progressive Policy is not triggered by the facts of the Accident because Blanco Castro was not operating the Tractor-Trailer pursuant to the Motor Carrier/DOT authority of Ethan Trucking at the time of the Accident.

65. The MCS 90 Endorsement to the Progressive Policy is not triggered by the facts of the Accident because Blanco Castro was not operating the Tractor-Trailer as an employee and/or agent of Ethan Trucking at the time of the Accident.

66. For each of the foregoing reasons, Progressive is entitled to an Order holding:

   i. The Progressive Policy does not afford liability coverage for any losses sustained in the Accident.

   ii. Progressive has no duty under the Progressive Policy to defend Blanco Castro, Ethan Trucking, Mesa Carriers, or any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit.

iii. Progressive has no duty under the Progressive Policy to indemnify Blanco Castro, Ethan Trucking, Mesa Carriers, or any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit.

iv. The MCS 90 Endorsement to the Progressive Policy is not triggered under the facts of the Accident.

v. Progressive has no duty under the Progressive Policy to indemnify or otherwise satisfy any judgment entered in connection with the Accident and/or the Underlying Lawsuit.

WHEREFORE, Progressive Express Insurance Company prays that the Court enter judgment in its favor as set forth hereinabove and for such other and further relief as is just and proper.

Respectfully submitted,

**MOUNCE, GREEN, MYERS, SAFI, PAXSON & GALATZAN**
**A Professional Corporation**

/s/ S. Anthony Safi
S. Anthony Safi
safi@mgmsg.com
State Bar No. 17516800
P. O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1548

Attorneys for Plaintiff, Progressive Express Insurance Company